UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAN BONOMO,

    Plaintiff,

v.                              Case No. 8:21-cv-1804-VMC-SPF

EZPAWN FLORIDA, INC. d/b/a
VALUE PAWN AND JEWELRY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant EZPawn Florida, Inc.'s Motion for Summary Judgment (Doc. # 25), filed on June 8, 2022, Plaintiff Jan Bonomo's Motion for Partial Summary Judgment (Doc. # 26), filed on June 8, 2022, and Ms. Bonomo's Motion to Strike (Doc. # 39), filed on August 3, 2022. Ms. Bonomo has responded to EZPawn's Motion (Doc. # 37), and EZPawn has replied. (Doc. # 40). EZPawn has responded to both of Ms. Bonomo's Motions. (Doc. ## 31; 42). For the reasons that follow, EZPawn's Motion for Summary Judgment is granted in part and denied in part, and both of Ms. Bonomo's Motions are denied.

## I. **Background**

### A. **EZPawn Stores**

EZPawn owns and operates pawn shops in Florida. (Doc. # 25 at ¶ 1). EZPawn's stores are typically staffed with between five and seven employees. (Doc. # 37-3). EZPawn's employee handbook defines full-time employment as 30 hours per week. (Doc. # 37-8 at 6). EZPawn contends that employees are expected to work 35 to 40 hours depending on the business needs of the individual store. (Doc. # 25-5 at ¶ 7). However, during certain periods of time in 2019, employees occasionally worked fewer than 35 hours a week. (Doc. # 37-4).

At EZPawn, the Store Manager, Store Manager in Training, and the Lead Pawnbrokers are the only employees with keys to the store. (Heinrich Depo. Doc. # 25-3 at 43:17-25; Miller Depo. Doc. # 26-5 at 90:17-91:10). Responsibilities of the Lead Pawnbroker role include opening and closing the store when the Store Manager is not there. (Heinrich Depo. Doc. # 25-3 at 85:2-14). Opening or closing the store would require that employee to work more than eight hours day. (Id.). Closing employees can work anywhere from 30 minutes to over an hour after closing. (Id. at 108:1-18; Doc. # 25-5 at ¶ 14).

For security reasons, EZPawn has a policy of having at least two employees present at the store during operating hours. (Bonomo Depo. Doc. # 25-1 at 110:7-15). Because of the variety of merchandise that customers bring in, at any given time, a Lead Pawnbroker or Pawnbroker will have to lift, test, and evaluate merchandise. (Doc. # 25-5 at ¶ 11). A customer may pawn a valuable item that needs to be assessed and secured immediately. (Id.).

After the store closes for the day, employees conduct pawn walks, review inventory, and secure valuable items. (Doc. # 25-5 at ¶ 13). These tasks are critical to ensure that there are no missing items and that all items are secure overnight. (Id.). The position listing for Pawnbroker does not reference these responsibilities, but provides that the position requires the employee to perform "other duties as assigned by management." (Doc. # 37-6 at 3).

According to EZPawn, "[i]t is critical for each employee to be able to work more than eight hours per day and five days a week in order for the store to operate properly and for the employees to be able to adequately complete their duties." (Doc. # 25 at ¶ 18). However, the former District Manager for EZPawn, Joe Heinrich, testified that it would be possible for a Pawnbroker — but not a Lead Pawnbroker — to

work fewer than eight hours a day. (Doc. # 25 at ¶ 32; Heinrich Depo. Doc. # 25-3 at 95:21-96:3).

## B. **Ms. Bonomo's Employment**

Ms. Bonomo was hired by EZPawn as a Pawnbroker in 2004 and worked at the EZPawn store located on Waters Avenue in Tampa, Florida, until her termination in January, 2019. (Bonomo Depo. Doc. # 25-1 at 18:24-19:8; 45:18-20). As a Pawnbroker, Ms. Bonomo worked an average of 36 hours per week. (Id. at 215:23-25).

In 2018, Ms. Bonomo was promoted from Pawnbroker to Lead Pawnbroker. (Id. at 19:5-11; 53:20-24). The parties dispute whether Ms. Bonomo was a Lead Pawnbroker in name only. (Doc. # 25 at ¶ 21). According to Ms. Bonomo, she did not perform the duties of a Lead Pawnbroker. (Bonomo Depo. Doc. # 25-1 at 55:12-56:4). Ms. Bonomo was permitted to approve loans, which only Lead Pawnbrokers had the authority to do. (Id. at 108:1-109:15; Cartwright Depo Doc. # 25-2 at 68:24-69:2). However, while "there were certain things that [Ms. Bonomo] had access to that a regular team member did not," Ms. Bonomo was not performing all the responsibilities of the Lead Pawnbroker role. (Cartwright Depo. Doc. # 25-2 at 68:11-69:2). Ms. Bonomo did not have keys to the store, which meant she was unable to open or close the store by herself. (Id. at 27:4-5; Heinrich

Depo. Doc. # 25-3 at 43:24–44:5). While Ms. Bonomo opened and closed the store on occasion in conjunction with a store manager, she never did so by herself. (Bonomo Depo. Doc. # 25-1 at 110:16–22). Further, Ms. Bonomo was not permitted to stay in the store alone unless other managers were present, nor did she conduct pawn walks. (Cartwright Depo. Doc. # 25-2 at 28:23–29:7).

In January 2019, Stephanie Cartwright became the store manager at the Waters Avenue EZPawn location. (Id. at 19:20–24). While Ms. Bonomo's previous manager did not hold her to her role in terms of having keys to the store, Ms. Cartwright planned to give Ms. Bonomo keys to the store in the new fiscal year, which began in September. (Id. at 21:22–22:7; 27:2–28:16; 88:11–20). Ms. Cartwright did not indicate whether she did, in fact, ultimately require Ms. Bonomo to have keys to the store. (Id. at 27:2–11).

**C. Ms. Bonomo's FMLA Leave**

In early 2019, Ms. Bonomo was diagnosed with chronic hip and leg pain. (Bonomo Depo. Doc. # 25-1 at 150:7–12). In October 2019, she was admitted to the hospital because she had contracted sepsis and had a fever that persisted for almost two months. (Id. at 149:20–25). Accordingly, Ms. Bonomo took FMLA leave beginning on October 19, 2019, and

concluding on January 12, 2020. (Id. at 154:11–16; Doc. # 25 at ¶ 61).

At the conclusion of her FMLA leave, Ms. Bonomo requested an accommodation because of her hip and leg pain. (Bonomo Depo. Doc. # 25-1 at 90:4–11). She requested to work no more than four days a week and no more than eight hours a shift. (Id. at 119:1–6). Ms. Bonomo submitted her medical restrictions to Frank Salinas, the HR Leave Administration Specialist, on January 6, 2020. (Id. at 91:16–22).

On January 10 and 13, Ms. Bonomo exchanged emails with Mr. Salinas regarding her accommodation request. (Id. at 159:23–160:15). Ms. Bonomo also had a phone conversation with Mr. Salinas, during which he informed her he needed to know the specific time frame for her restrictions. (Id. at 168:1–5). Ms. Bonomo submitted a medical note to Mr. Salinas indicating that the restrictions regarding working no more than four days a week, no more than eight hours a day were permanent. (Doc. # 37-11 at 2).

EZPawn assessed Ms. Bonomo's request for accommodations and ultimately decided it would be unable to accommodate her restrictions. (Heinrich Depo. Doc. # 25-3 at 79:4–11). Mr. Heinrich made the ultimate decision. (Id.). When assessing Ms. Bonomo's request for accommodations, EZPawn did so based

on Ms. Bonomo's position as a Lead Pawnbroker. (Bonomo Depo. Doc. # 25-1 at 174:12-175:8). Ms. Bonomo did not inform anyone at corporate that she believed her role to be that of a Pawnbroker because she assumed that they knew. (Id. at 175:9-15). However, Ms. Cartwright had informed Mr. Heinrich that at the time Ms. Cartwright started, Ms. Bonomo was not fully taking on the role of Lead Pawnbroker. (Cartwright Depo. Doc. # 25-2 at 34:11-22).

Ms. Bonomo was terminated on January 13, 2020. (Doc. # 26-3 at 5). Ms. Bonomo was 62 years old at the time of her termination. (Bonomo Depo. Doc. # 25-1 at 218:25-219:4). The parties dispute who replaced Ms. Bonomo upon her termination. According to EZPawn, Kevin Upton, who was 61 years old at the time, replaced Ms. Bonomo. (Doc. # 25-7 at 7). According to Ms. Bonomo, Jamaal Smith, who was in his 40s, replaced her. (Doc. # 37 at 21-22).

Since her termination, Ms. Bonomo has been unable to find new employment. (Doc. # 26-3 at 6-9). Ms. Bonomo has applied to twenty-seven different employers and has continued to actively search for employment by using the Nextdoor app, putting her resume on Indeed, and asking in the neighborhood to see if anyone knows about job openings. (Bonomo Depo. Doc.

# 25-1 at 19:21–21:10). Ms. Bonomo has not submitted a physical application to any position. (Id. at 10).

Ms. Bonomo initiated this action against EZPawn on June 30, 2021, asserting claims for age discrimination under the Florida Civil Rights Act (Count I), disability discrimination under the Florida Civil Rights Act (Count II), retaliation under the Florida Civil Rights Act (Count III), interference under the Family and Medical Leave Act (Count IV), and retaliation under the Family and Medical Leave Act (Count V). EZPawn filed its answer on August 2, 2021, wherein it raised seventeen affirmative defenses. (Doc. # 5). EZPawn's sixth affirmative defense alleges that Ms. Bonomo failed to mitigate her damages as required by law. (Id. at 7).

EZPawn now seeks entry of summary judgment in its favor. (Doc. # 25). Ms. Bonomo seeks partial summary judgment on EZPawn's sixth affirmative defense. (Doc. # 26). Each party has responded (Doc. ## 31; 37), and EZPawn has replied. (Doc. # 40). Ms. Bonomo has also filed a Motion to Strike Paragraphs 11–21 of Joseph Heinrich's Declaration (Doc. # 39), to which EZPawn has responded. (Doc. # 42). The Motions are now ripe for review.

## II. <u>Legal Standard</u>

### A. <u>Sham Affidavit</u>

When considering a motion for summary judgment, the Court must consider all proffered evidence and cannot disregard an affidavit simply because it conflicts with a deposition. <u>See</u> <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892-93 (5th Cir. 1980) (stating that district courts must not resolve factual disputes by weighing conflicting evidence; doing so is within the province of the jury). However, the Court may strike any affidavit it considers a "sham-affidavit." <u>Van T. Junkins and Assoc. v. U.S. Indus.</u>, 736 F.2d 656, 656-57 (11th Cir. 1984). A sham affidavit is defined as an affidavit given and submitted for the sole purpose of creating a factual dispute where it is clear through previous deposition testimony that one does not exist. <u>Id.</u> at 659.

The "sham affidavit rule should be applied sparingly." <u>Kernel Records Oy v. Mosley</u>, 694 F.3d 1294, 1303 n.6 (11th Cir. 2012) (citing <u>Latimer v. Roaring Toyz, Inc.</u>, 601 F.3d 1224, 1237 (11th Cir. 2010)). In order to strike an affidavit as a sham, the Court "must find 'some inherent inconsistency' between an affidavit and the affiant's sworn testimony." <u>Mortg. Payment Prot., Inc. v. Cynosure Fin.,</u>

Inc., No. 6:08-cv-1212, 2011 WL 2670081, at *4 (M.D. Fla. July 8, 2011) (quoting Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986)). It is not sufficient for a statement in an affidavit to merely be at odds with deposition testimony previously given. Bone, 622 F.2d at 894.

B. **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing

the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. Analysis

The Court will address Ms. Bonomo's Motion to Strike first, followed by EZPawn's Motion for Summary Judgment, and then Ms. Bonomo's Motion for Partial Summary Judgment.

#### A. Ms. Bonomo's Motion to Strike

##### 1. Discovery Deadline

As an initial matter, Ms. Bonomo argues that the Court ought not to consider Mr. Heinrich's declaration (Doc. # 25-6) because it is dated three days after the close of discovery. (Doc. # 39 at 4). Ms. Bonomo states that EZPawn neither conferred with her counsel nor moved for leave to amend the Court's scheduling order to conduct discovery after the deadline. (Id.). However, Ms. Bonomo offers no authority to support the contention that the Court should not consider a declaration submitted after the discovery deadline, nor does EZPawn attempt to address this argument in its response.

Courts in this Circuit have declined to consider declarations submitted after the discovery deadline where such declarations violate the parties' Rule 26 disclosures. See, e.g., Liberty Int'l Underwriters v. Landstar Ranger, Inc., No. 3:08-cv-1079-HLA-JRK, 2010 WL 11507988, at *2-3

(M.D. Fla. Apr. 30, 2010) (excluding an affidavit submitted after the discovery deadline where the identity of the affiant was not disclosed); Dugas v. 3M Co, No. 3:14-cv-1096-BJD-JBT, 2015 WL 3938777, at *3 (M.D. Fla. June 26, 2015) (excluding a declaration where the subject matter differed between a disclosed witness' deposition testimony and later-submitted declaration). Under Rule 26, "a party must, without awaiting a discovery request, provide to the other parties . . . the name . . . of each individual likely to have discoverable information — along with the subjects of that information[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). The disclosing party further "must supplement or correct its disclosure or response . . . in a timely manner if the [disclosing] party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A).

For example, in Dugas, the Court did not consider a declaration submitted after the discovery deadline where the affiant had been disclosed — and deposed — but the subject matter of the declaration involved topics regarding which the affiant had previously claimed to lack personal knowledge. Dugas, 2015 WL 3938777 at *3. The Court based its decision on the fact that the precise topic covered in the declaration

had not been disclosed to the other party. Id. Conversely, in Watson v. Lake County, No. 5:09-cv-399-PAM-TEM, 2011 WL 13175635 at *4 (M.D. Fla. Feb. 23, 2011), the Court declined to strike declarations submitted after the discovery deadline where the declarants "had already submitted affidavits before the discovery deadline that are virtually identical to the statements made in their subsequent declarations[.]" Id.

Here, EZPawn did not violate any Rule 26 disclosure requirements by submitting Mr. Heinrich's declaration after the deadline. Like in Watson, the identity of Mr. Heinrich was known to Ms. Bonomo. See Watson, 2011 WL 13175635, at *4 (considering a later-submitted declaration submitted after the discovery deadline). Unlike in Dugas, the subject matter of Mr. Heinrich's declaration was substantially equivalent to that discussed in his deposition. See Dugas, 2015 WL 3938777, at *3 (excluding a declaration on the grounds that its proponent did not provide sufficient notice to the opposing party). While there are minor variations between Mr. Heinrich's deposition and later-submitted declaration, which the Court will address below, the subject matter of his declaration was previously disclosed to Ms. Bonomo. Specifically, Mr. Heinrich's declaration focused on Ms. Bonomo's accommodations requests and his assessment of the

reasonableness of these requests. (Doc. # 25-6). Mr. Heinrich previously covered these same topics in his deposition testimony. (Heinrich Depo. Doc. # 25-3). The Court therefore will not strike Mr. Heinrich's declaration solely because it was submitted after the discovery deadline.

### 2.   Sham Affidavit

Ms. Bonomo also contends that Mr. Heinrich's May 13, 2022, declaration is a sham affidavit because it contains statements that are inconsistent with his deposition testimony. (Doc. # 39 at 4). Specifically, Ms. Bonomo argues that Mr. Heinrich's statement in his declaration that it would not be feasible for a Pawnbroker to work only four days a week and no more than eight hours per shift conflicts with his deposition testimony that Ms. Bonomo's request to work no more than eight hours could have been accommodated if she was a Pawnbroker. (Doc. # 25-6 at ¶ 15; Heinrich Depo. Doc. # 25-3 at 86:2-5; 96:2-6). Ms. Bonomo thus seeks that the Court strike paragraphs 11-21 of Mr. Heinrich's declaration. (Doc. # 39 at 4).

Ms. Bonomo's argument relies on Mr. Heinrich's deposition testimony that out of all Ms. Bonomo's requested accommodations, the request to work no more than eight hours a day was the "major one" that EZPawn could not accommodate.

(Heinrich Depo. Doc. # 25-3 at 84:22-25). According to Ms. Bonomo, this demonstrates that out of Ms. Bonomo's requested accommodations, the only one Mr. Heinrich was unable to accommodate was her request to work no more than eight hours a day. (Doc. # 26 at 6).

Here, there are no inherent inconsistencies between Mr. Heinrich's deposition testimony and later-submitted declaration. True, Mr. Heinrich's statement regarding Ms. Bonomo's request to work eight hours a day could be construed to imply that her other requests — namely, the request for a four-day, 32-hour work week — could be accommodated. But "[c]redibility determinations, the weighing of the evidence, and *the drawing of legitimate inferences* from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (emphasis added). Because a finding of inconsistency between Mr. Heinrich's deposition and affidavit would require drawing inferences from Heinrich's deposition statements, the Court does not find "some inherent inconsistency" between the deposition testimony and the affidavit. Tippens, 805 F.2d at 954. Mr. Heinrich's affidavit thus does not rise to the level of a sham affidavit with respect to the 32-hour work week accommodation.

16

Ms. Bonomo also contends Mr. Heinrich's declaration is inconsistent with his deposition with respect to the eight-hour a day requirement. (Doc. # 26 at 6). Mr. Heinrich reiterated several times during his deposition that if Ms. Bonomo "was just a normal pawnbroker, we could have accommodated" her request to work fewer than eight hours a day. (Heinrich Dep. Doc. # 25-3 at 86:2-5; 96:2-6). In contrast, Mr. Heinrich stated in his declaration that "[i]t would not have been feasible for a Lead Pawnbroker or Pawnbroker to work only four days a week *and* no more than eight hours per shift." (Doc. # 25-6 at ¶ 15) (emphasis added).

While these two statements may facially appear at odds, they are not inherently irreconcilable. Mr. Heinrich's affidavit states that EZPawn would not have been able to accommodate *both* the four-day a week and the eight-hour a day request, while his deposition testimony could be construed to refer only to the eight-hour a day request. "If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue even it if conflicts with earlier testimony in the party's deposition, governs. In these instances, conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of

fact." <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1530 (11th Cir. 2017). The Court will thus consider both Mr. Heinrich's deposition testimony and his later-submitted declaration for summary judgment purposes.

### 3.   **Personal Knowledge**

Ms. Bonomo additionally argues that paragraphs 13–21 of Mr. Heinrich's declaration should be stricken as speculation. (Doc. # 39 at 7). According to Ms. Bonomo, Mr. Heinrich testified that he did not review the store schedules with respect to Ms. Bonomo's requested restrictions and thus he lacks personal knowledge regarding whether he could accommodate her. (<u>Id.</u>).

"Although personal knowledge is a threshold requirement for a declaration considered on a motion for summary judgment, Fed. R. Civ. P. 56(e) (1), a declaration need not explicitly state that the declaration is made on personal knowledge. Rather, the Court may infer from the statements in the declaration that the declaration is made on personal knowledge." <u>Voter Verified, Inc. v. Premier Election Sols., Inc.</u>, No. 6:09-cv-1968-CEM-KRS, 2010 WL 3123129, at *3 (M.D. Fla. Aug. 9, 2010); <u>see</u> <u>DIRECTV, Inc. v. Budden</u>, 420 F.3d 521, 529–30 (5th Cir. 2005) (finding personal knowledge could be reasonably inferred from an affiant's

position with a corporation); U.S. v. Kelsor, 665 F.3d 684, 697 (6th Cir. 2011) (explaining that the threshold for finding personal knowledge under Federal Rule of Evidence 602 is low).

Here, EZPawn contends that Mr. Heinrich has "extensive knowledge" of EZPawn's operations because of his experience with EZPawn as a Store Manager in Training, Store Manager, and Area Manager. (Doc. # 42 at 7). Further, even though Mr. Heinrich did not review the store schedules for the purpose of evaluating Ms. Bonomo's requested accommodations, Mr. Heinrich reviewed these schedules on a weekly basis. (Heinrich Depo. Doc. # 25-3 at 106:19–22). Mr. Heinrich's weekly review of the schedules as well as his position within EZPawn at the time he made the decision is a sufficient basis for the Court to infer he had personal knowledge. See Budden, 420 F.3d at 529–30 (finding an affiant's position within a company sufficient to support an inference personal knowledge). Even though Mr. Heinrich did not specifically review the schedules to determine whether he could accommodate Ms. Bonomo's requested restrictions, there is sufficient evidence to support a finding that he was familiar with the schedules.

Ms. Bonomo's Motion to Strike (Doc. # 39) is thus denied.

**B. <u>EZPawn's Motion for Summary Judgment</u>**

Ms. Bonomo has alleged five counts in her Complaint. (Doc. # 1-1). The Court will address Ms. Bonomo's claims for disability discrimination and retaliation under the Florida Civil Rights Act (Counts II and III), followed by her claims for interference and retaliation under the Family and Medical Leave Act (Counts IV and V), and then her claim for age discrimination under the Florida Civil Rights Act (Count I).

### 1.   <u>Count II — FCRA Disability Discrimination</u>

"[B]ecause FCRA is patterned after Title VII and related federal statutes and regulations, courts construe FCRA in conformity with Title VII and the Americans with Disabilities Act (ADA)." <u>Byrd v. BT Foods, Inc.</u>, 26 So. 3d 600, 605 (Fla. 4th DCA 2009). "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." <u>Holly v. Clairson Indus., LLC</u>, 492 F.3d 1247, 1255–56 (11th Cir. 2007). "[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so

long as that individual is "otherwise qualified," and unless the employer can show undue hardship." Id. at 1262.

EZPawn contends that Ms. Bonomo is not a qualified individual because she is unable to work up to 40 hours or five shifts per week with or without an accommodation. (Doc. # 25 at 11-12). A "qualified individual" is a person who, with or without reasonable accommodations, is able to perform the essential functions of the job he holds or desires. 42 U.S.C. § 12111(8). "[A] plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." D'Angelo v. ConAgra Foods, 422 F.3d 1220, 1229 (11th Cir. 2005) (quotation marks omitted). "And even a 'relative[ly] infrequen[t]' inability to perform a job's essential functions is enough to render a plaintiff not a 'qualified individual' under the ADA." Billups v. Emerald Coast Utils. Auth., 714 F. App'x 929, 936 (11th Cir. 2017) (quoting Holbrook v. City of Alpharetta, 112 F.3d 1522, 1528 (11th Cir. 1997)).

"An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." Lucas, 257

F.3d at 1255. "An accommodation that simply eliminates, rather than enables the disabled employee to perform, an essential function of their job is 'per se unreasonable.'" <u>Leme v. S. Baptist Hosp. of Fla., Inc.</u>, 248 F. Supp. 3d 1319, 1345 (M.D. Fla. 2017).

A factual dispute exists as to whether working eight hours a day, five days a week, was an essential function of Ms. Bonomo's position. First, a reasonable jury could find that Ms. Bonomo's position was that of a Pawnbroker, rather than a Lead Pawnbroker. Although Ms. Bonomo performed some of the duties of a Lead Pawnbroker, like approving loans, she did not perform several of the requirements of the role. (Bonomo Depo. Doc. # 25-1 at 108:1–109:15; Cartwright Depo Doc. # 25-2 at 68:24–69:2). Specifically, Ms. Bonomo did not open or close the store by herself, nor did she have keys to the store. (Cartwright Depo. Doc. # 25-2 at 27:4–5; Heinrich Depo. Doc. # 25-3 at 43:24–44:5; Bonomo Depo. Doc. # 25-1 at 110:16–22). Ms. Cartwright recognized that Ms. Bonomo was not performing the functions typically required of a Lead Pawnbroker. (Cartwright Depo. Doc. # 25-2 at 21:22–22:7; 27:2–28:16; 88:11–20). While Ms. Cartwright expressed her intention to hold Ms. Bonomo to the Lead Pawnbroker role, it is not clear whether she did so. (<u>Id.</u> at 27:2–11). There is

thus sufficient evidence from which a reasonable jury could find that Ms. Bonomo was a Lead Pawnbroker in name only.

Second, the parties have presented conflicting evidence concerning whether working 40 hours a week or more than eight hours a day were essential functions of the Pawnbroker position. In his deposition testimony, Mr. Heinrich reiterated several times that if Ms. Bonomo "was just a normal pawnbroker, we could have accommodated" her request to work fewer than eight hours a day. (Heinrich Depo. Doc. # 25-3 at 86:2–5; 96:2–6). In his later-submitted declaration, Mr. Heinrich stated "[i]t would not have been feasible for a Lead Pawnbroker or Pawnbroker to work only four days a week *and* no more than eight hours per shift." (Doc. # 25-6 at ¶ 15) (emphasis added). Viewed in the light most favorable to Ms. Bonomo, Mr. Heinrich's statement supports an inference that had Ms. Bonomo been a Pawnbroker, the request to work only eight hours a day could be accommodated.

Further, Ms. Bonomo has presented evidence sufficient to create a dispute over whether working 40 hours a week was an essential function of the Pawnbroker position. The EZPawn employee handbook classifies full-time employees as those who work 30 or more hours per week. (Doc. # 37-8 at 10). The job postings for the Pawnbroker and Lead Pawnbroker positions

lack any reference to the amount of time required weekly. (Doc. # 37-6; Doc. # 37-7). And staff schedules for 2019 indicate that at least on some occasions, EZPawn employees were working as little as 30 hours per week. (Doc. # 37-4). While Ms. Cartwright testified that she had never seen any employee work 30 hours, she expressed that she did not doubt that full-time is defined as 30 hours or more per week. (Cartwright Depo. Doc. # 25-2 at 72:21-73:1).

EZPawn contests Ms. Bonomo's characterization of the scheduling requirements. According to EZPawn, there are no part-time positions and "each employee is expected to work 35 to 40 hours per week." (Doc. # 25-5 at ¶ 7). EZPawn further explains that "it is critical that each employee typically work five days per week." (Doc. # 25-6 at ¶ 11). When asked, Ms. Bonomo was unable to identify a Pawnbroker or Lead Pawnbroker who worked only 32 hours a week. (Bonomo Depo. Doc. # 25-1 at 105:25-106:7; 164:20-165:8). And EZPawn has presented evidence that the definition of full-time employment as 30 hours per week in the employee handbook was for the purpose of determining entitlement to benefits only, although the handbook does not explicitly make that distinction. (Miller Depo. Doc. # 25-4 at 34:20-25; 35:23-36:2).

The conflict between Ms. Bonomo's evidence and that of EZPawn highlights the existence of a factual dispute best resolved by the trier of fact. While the absence of the 40 hour a week requirement in the written job description is not dispositive either way, a reasonable jury could find from the employee handbook designation and the instances of other employees working fewer than 40 hours per week that doing so was not an essential function of the role. See Perry v. City of Avon Park, Fla., 662 F. App'x 831, 834 (11th Cir. 2016) ("We look to the employer's judgment as to what functions of a job are essential, including the written description of the position."); Richardson v. Honda Mfg. of Ala., LLC, 635 F. Supp. 2d 1261, 1276 (N.D. Ala. 2009) ("Relatedly, the ADA does not mandate the creation of job descriptions to substantiate the essential functions of a position."). The evidence thus supports an inference that that Ms. Bonomo was, in practice, a Pawnbroker, and that neither an eight-hour shift nor a 40-hour week were essential functions of that position.

Given that a reasonable jury could find that working 40 hours a week was not an essential function of Ms. Bonomo's position, her request to work 32 hours a week is not unreasonable as a matter of law. EZPawn cites to Eleventh

Circuit precedent to support its argument that it was not required to move Ms. Bonomo to a part-time position if such a position was not readily available. (Doc. # 25 at 14). True, employers have no duty to create a part-time position that does not already exist to accommodate an employee. Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998). But it is not clear from the evidence that Ms. Bonomo's requested accommodation would involve forcing EZPawn "to depart from its existing structure and policies." (Doc. # 25 at 14). While EZPawn is correct that it has no duty to create a part-time position if one does not exist, Ms. Bonomo has created a factual dispute as to whether her requested accommodation necessarily involves part-time work.

Ms. Bonomo's requested accommodation is thus not categorically unreasonable. See Snead v. Fla. Agric. & Mech. Univ. Bd. of Trustees, No. 4:15-cv-325-RLH-CAS, 2016 WL 9049357, at *3 (N.D. Fla. Dec. 21, 2016) ("The whole point of the reasonable-accommodation requirement is that employers sometimes must accommodate a disability — sometimes must bend a general rule to make room for an employee with a disability."). The ultimate determination of whether Ms. Bonomo's requested accommodations are reasonable is for the trier of fact to determine.

Summary judgment is thus denied as to Count II.

## 2.   Count III — FCRA Retaliation

"To make a prima facie case for a claim of retaliation under Title VII, a plaintiff must first show (1) that "she engaged in statutorily protected activity," (2) that "she suffered an adverse action," and (3) "that the adverse action was causally related to the protected activity." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1135 (11th Cir. 2020) (citing Jefferson v. Sewon Am., Inc., 891 F.3d 911, 924 (11th Cir. 2018)). Courts construe the causation element "broadly" and "a plaintiff need only demonstrate 'that the protected activity and the adverse action were not wholly unrelated.'" Debe v. State Farm Mut. Auto. Ins., 860 F. App'x 637, 639 (11th Cir. 2021) (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). A plaintiff can establish a causal connection by showing a close temporal proximity between her employer's discovery of the protected activity and the adverse action, but the temporal proximity must be "very close." Thomas v. Dejoy, No. 5:19-cv-549-TKW-MJF, 2021 WL 4992892, at *10 (N.D. Fla. July 19, 2021). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action."

Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2016). "If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." Liebman, 808 F.3d at 1298 (quoting Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012)).

As an initial matter, EZPawn contends that Ms. Bonomo's retaliation claim is an improper attempt to repackage the events underlying her discrimination claim as actionable retaliation. (Doc. # 25 at 18). But Ms. Bonomo does not argue that the failure to accommodate alone constitutes retaliation. (Doc. # 1-1 at ¶ 37). Rather, Ms. Bonomo claims that EZPawn "retaliated against [her] for opposing unlawful discrimination and for exercising her protected rights in violation of the FCRA by terminating [her] after she requested it make reasonable accommodations for her disabilities." (Id.). Thus, the adverse employment action forming the basis of Ms. Bonomo's prima facie case is her termination.

It is undisputed that Ms. Bonomo engaged in protected activity by requesting accommodations. (Doc. # 25 at 24); see Errickson v. Lakeland Reg'l Med. Ctr., Inc., No. 8:22-cv-533-VMC-CPT, 2022 WL 3139223, at *6 (M.D. Fla. Aug. 5, 2022) ("Numerous circuit courts have found that

a request for accommodations is a protected activity under the ADA."). It is also undisputed that Ms. Bonomo was terminated in early January after making her request for accommodations. (Doc. # 25-2 at 12). A reasonable jury could find that the exceedingly short period of time between Ms. Bonomo's protected activity and her termination evinces a causal connection between the two events. See Debe, 860 F. App'x at 639 ("A three-to-four month delay is too long, while a one-month gap may satisfy the test." (internal citations omitted)).

EZPawn does not offer a non-retaliatory reason for Ms. Bonomo's termination with respect to her FCRA retaliation claim. (Doc. # 25 at 18). However, the Court recognizes that EZPawn argues for the purposes of Ms. Bonomo's FMLA retaliation claim that EZPawn's inability to accommodate Ms. Bonomo's restrictions, not retaliation, motivated her termination. (Doc. # 25 at 23–24). EZPawn's argument as to Ms. Bonomo's FMLA retaliation claim thus guides the Court's analysis of Ms. Bonomo's FCRA retaliation claim.

EZPawn contends that Ms. Bonomo was terminated because of EZPawn's good faith belief that it could not accommodate Ms. Bonomo's restrictions. (Doc. # 25 at 24). EZPawn has thus demonstrated a legitimate, nondiscriminatory reason for Ms.

Bonomo's termination. <u>See</u> <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) ("[T]he employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (internal quotations omitted)). Ms. Bonomo must therefore show that EZPawn's proffered reason was pretextual. <u>Combs</u>, 106 F.3d at 1538.

Here, Ms. Bonomo has presented evidence that creates a factual dispute as to whether EZPawn's proffered reason for her termination is pretextual. Mr. Heinrich explained that he made the decision to terminate Ms. Bonomo based on his belief that she was a Lead Pawnbroker. (Doc. # 25-6 at ¶ 15). According to Mr. Heinrich, part of the reason that EZPawn could not accommodate Ms. Bonomo's restriction was because if Ms. Bonomo could not open and close the store, "EZPawn would have had to schedule another employee to relieve Ms. Bonomo if a shift were to require more than eight hours of work." (<u>Id.</u> at ¶ 17). However, when Ms. Cartwright began at the Waters Avenue location in January 2019, she informed Mr. Heinrich that Ms. Bonomo did not have keys to the store and was not fulfilling the role of Lead Pawnbroker. (Cartwright

Depo. Doc. # 25-2 at 33:15–34:18). EZPawn has not presented any further evidence on whether Ms. Cartwright and Mr. Heinrich ultimately held Ms. Bonomo to her role. A reasonable jury could thus find that Mr. Heinrich did not act in good faith when he assessed Ms. Bonomo's request for accommodations as if she were a Lead Pawnbroker, despite arguably knowing she was, in practice, a Pawnbroker. Accordingly, a genuine dispute exists as to whether Mr. Heinrich had a good faith belief that Ms. Bonomo was a Lead Pawnbroker when he made the determination that EZPawn could not accommodate her restrictions. There is thus sufficient evidence that EZPawn's statement that Ms. Bonomo was terminated because her restrictions could not be accommodated in the Lead Pawnbroker role is pretext for retaliation.

Summary judgment is thus denied as to Count II.

### 3.   <u>Count IV – FMLA Interference</u>

"[T]he FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act . . . and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the Act." <u>Strickland v. Water Works & Sewer Bd. of City of Birmingham</u>,

239 F.3d 1199, 1206 (11th Cir. 2001). "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Id. at 1206–07. "In general, the employer's motives are irrelevant to an interference claim . . . an employer may affirmatively defend against the claim by establishing that it would have terminated the employee regardless of her request for or use of FMLA leave." Batson v. Salvation Army, 897 F.3d 1320, 1331 (11th Cir. 2018) (internal citations omitted). At the summary judgment stage, the inquiry for the Court with respect to a FMLA interference claim parallels that of a FMLA retaliation claim and looks to "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." Id. "[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." Strickland, 239 F.3d at 1208.

Like with Ms. Bonomo's retaliation claims, EZPawn has presented evidence that her termination was based on its belief that it could not accommodate her requested restrictions. (Doc. # 25-6 at ¶ 15). However, Ms. Bonomo has

similarly presented evidence that creates a factual dispute as to whether Mr. Heinrich's determination that EZPawn could not accommodate her restrictions was in good faith. Because Ms. Bonomo has presented evidence that casts doubt on Mr. Heinrich's statement that he believed Ms. Bonomo was a Lead Pawnbroker, a reasonable jury could find EZPawn's proffered explanation for Ms. Bonomo's termination unworthy of credence, thus calling the true reason for Ms. Bonomo's termination into question. EZPawn has therefore not established, as a matter of law, that it would have terminated Ms. Bonomo had she not taken her FMLA leave.

Summary judgment is thus denied as to Count IV.

### 4.   **Count V – FMLA Retaliation**

As discussed, a prima facie case of FMLA requires a plaintiff show that "(1) she engaged in statutorily protected activity, (2) suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." Strickland, 239 F.3d at 1207.

EZPawn does not contest that Ms. Bonomo engaged in protected activity or that she suffered an adverse action. (Doc. # 25 at 24). Rather, EZPawn argues that Ms. Bonomo cannot demonstrate causation because EZPawn's failure to

accommodate her restrictions, not retaliation, led to her termination. (Doc. # 25 at 23-24).

Here, Ms. Bonomo's FMLA leave concluded on January 12, 2020. (Bonomo Depo. Doc. # 25-1 at 154:11-16). She was terminated on January 13, 2020. (Doc. # 26-3 at 5). The temporal proximity between Ms. Bonomo's protected activity and adverse employment action thus supports an inference of a causal relationship. See Debe, 860 F. App'x at 639 (explaining a one-month gap between protected activity and an adverse employment action can demonstrate causation).

Because Ms. Bonomo has demonstrated a prima facie case, the burden of production shifts to EZPawn to articulate a legitimate, nondiscriminatory reason for the challenged action. Jones, 854 F.3d at 1271. Here, EZPawn contends that Ms. Bonomo was terminated because of EZPawn's good faith belief that it could not accommodate Ms. Bonomo's restrictions. (Doc. # 25 at 24). EZPawn has thus demonstrated a legitimate, nondiscriminatory reason for Ms. Bonomo's termination. Ms. Bonomo must therefore show that EZPawn's proffered reason was pretextual. Combs, 106 F.3d at 1538.

Like with Ms. Bonomo's retaliation claim under FCRA, she has provided evidence that creates a triable issue as to whether EZPawn's proffered reason for her termination is

pretextual. The evidence demonstrates a factual dispute concerning whether Mr. Heinrich's belief that Ms. Bonomo was a Lead Pawnbroker was in good faith. As the Court explained with respect to Ms. Bonomo's FCRA retaliation claim, because of the evidence suggesting Mr. Heinrich was aware that Ms. Bonomo was not fulfilling the responsibilities of the Lead Pawnbroker role, there exists a genuine dispute over whether EZPawn's proffered explanation was pretext for retaliation.

For the same reasons the Court has denied summary judgment in favor of EZPawn as to Ms. Bonomo's FCRA retaliation claim, summary judgment in favor of EZPawn is denied as to the Count V.

### 5.  __Count I — FCRA Age Discrimination__

"The FCRA makes it unlawful to discharge an employee because of his age or handicap . . . [a]ge discrimination claims brought under the FCRA are analyzed under the same framework as the Age Discrimination in Employment Act (ADEA)[.]" Rainey v. United Parcel Serv., Inc., 816 F. App'x 397, 400 (11th Cir. 2020). To establish a prima facie case of age discrimination, a plaintiff must demonstrate that:

> (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a

> substantially younger person filled the position
> from which he was discharged; and (4) he was
> qualified to do the job from which he was
> discharged.

Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015). "Once an employee has established a prima facie case, 'the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.' If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." Id. (quoting Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012)). The FCRA requires Bonomo to prove her age was the "but-for" cause for any adverse employment action. Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 177-78 (2009).

Here, it is undisputed that Ms. Bonomo is over 40 and thus a member of the protected class. However, there exists a factual dispute as to both whether she was replaced by a substantially younger person and whether she was qualified to do the job from which she was discharged.

The parties have presented conflicting evidence over who replaced Ms. Bonomo at the Waters Avenue store. EZPawn

contends that Ms. Bonomo was replaced by Kevin Upton, who was 61 years old at the time he was hired — only a year younger than Ms. Bonomo was when she was terminated. (Doc. # 25-7 at 7). Ms. Bonomo contends that she was actually replaced by Jamaal Smith, who is "significantly younger" than her. (Doc. # 37 at ¶ 85).

In support of this claim, EZPawn relies on Mr. Heinrich's declaration, where he states that Mr. Smith was assigned to work the Busch Boulevard store for the entirety of his employment, and that Mr. Upton began at the Waters Avenue store to replace Ms. Bonomo. (Doc. # 25-6 at ¶ 5, 6). However, during his deposition, Mr. Heinrich testified that Mr. Smith was hired as a Pawnbroker at the Waters Avenue store, where he remained for a period of six months to a year before being transferred to the Busch Boulevard location. (Heinrich Depo. Doc. # 25-3 at 70:8–14, 99:3–10). Further, in a December 12, 2019 email, Mr. Heinrich stated the Waters Avenue store was understaffed because of Ms. Bonomo's absence but that Mr. Smith would be starting on December 22. (Doc. # 37-9 at 61). While neither party has provided evidence on Mr. Smith's exact age, there is evidence to suggest that he is in his 40s. (Id. at 99:13–23). There thus exists a dispute over whether Ms.

Bonomo was replaced by someone substantially younger than her.

Assuming Ms. Bonomo can establish a prima facie case, the burden thus shifts to EZPawn to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Liebman, 808 F.3d at 1298. EZPawn contends that Ms. Bonomo was terminated because of Mr. Heinrich's belief that she was not a qualified individual and that her requested accommodation would have created an undue hardship. (Doc. # 25 at ¶ 3). EZPawn has thus provided a non-discriminatory reason for Ms. Bonomo's termination.

Ms. Bonomo must therefore show that EZPawn's proffered reason for her termination was pretextual. Liebman, 808 F.3d at 1298. To show pretext, Ms. Bonomo must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Id. (internal quotations omitted). Pretext may be established by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them

unworthy of credence." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations omitted).

As discussed, EZPawn has not demonstrated as a matter of law that it could not accommodate Ms. Bonomo's requested inquiry, and there is a genuine dispute regarding whether EZPawn's proffered reason for her termination was pretext for disability discrimination and retaliation. But Ms. Bonomo has not presented evidence that the stated reason for her termination was a pretext for *age* discrimination. While EZPawn's reason for terminating Ms. Bonomo may be improper in the retaliation or disability discrimination context, Ms. Bonomo has not produced evidence of a discriminatory animus sufficient to support a claim of age discrimination. <u>See Taylor v. Runyon</u>, 175 F.3d 861, 867 (11th Cir. 1999) ("Casting doubt on an employer's asserted reasons for an adverse employment action does not require judgment for the plaintiff, but it permits a reasonable jury to infer that the employer acted with the forbidden animus[.]"). Thus, in the absence of evidence suggesting age discrimination was the true reason for Ms. Bonomo's termination, summary judgment in favor of EZPawn is appropriate.

Summary judgment is thus granted as to Count I.

## C. <u>**Ms. Bonomo's Motion for Partial Summary Judgment**</u>

Ms. Bonomo seeks partial summary judgment on EZPawn's sixth affirmative defense, which alleges she failed to mitigate damages as required by law, on the ground that EZPawn failed to proffer any evidence concerning the availability of substantially equivalent employment positions. (Doc. # 26 at 1). EZPawn contends that Ms. Bonomo failed to mitigate her damages by not making reasonable efforts to obtain work. (Doc. # 31 at 2). EZPawn relies on the fact that Ms. Bonomo did not apply for any jobs between January 2020 and August 2021 and that she was unable to identify the companies she reached out to and how many positions she has applied for since August 2021 to support its claim. (<u>Id.</u>).

"While the injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment, the burden of proving lack of diligence is on the employer." <u>EEOC v. Massey Yardley Chrysler Plymouth, Inc.</u>, 117 F.3d 1244, 1251-52 (11th Cir. 1997). "To meet this burden, it has been consistently held that an employer must demonstrate that comparable work was available and the claimant did not seek it out." <u>Sellers v. Delgado Comm. Coll.</u>, 839 F.2d 1132, 1139 (11th Cir. 1988). However, "[i]f an employer proves that an employee has not

made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment." Id. Whether an employee has made reasonable efforts to obtain work is typically a question of fact for the jury. See Perry v. Schumacher Grp. of La., 2:13-cv-36-JES-NPM, 2020 WL 6938391, at *4 (M.D. Fla. Nov. 25, 2020) (explaining whether an employee failed to mitigate is a fact question for the jury to determine); Voss v. City of Key West, Fla., 24 F. Supp. 3d 1228, 1232–33 (S.D. Fla. 2014) (finding the reasonableness of mitigation efforts to be a question of fact).

Here, Ms. Bonomo is correct that the burden to prove that she failed to mitigate her damages rests on EZPawn, and that this burden typically involves proving both that substantially equivalent employment existed and that the employee did not exercise reasonable diligence in seeking it out. Sellers, 839 F.3d at 1139. But EZPawn has presented evidence from which a reasonable jury could find Ms. Bonomo did not exercise reasonable diligence. Specifically, EZPawn contends that Ms. Bonomo's failure to begin searching for new employment until August 2021, despite being terminated in January 2020, and her inability to identify which and how many positions she applied to evince her lack of reasonable

diligence. (Doc. # 31 at 2). Because whether Ms. Bonomo took reasonable efforts to secure alternative employment is a question of fact best left to the jury, a triable issue of fact exists.

If EZPawn were to successfully demonstrate that Ms. Bonomo was not reasonably diligent in seeking out alternative employment, it would be relieved of the opportunity to establish the availability of substantially comparable employment. Sellers, 839 F.3d at 1139. Because EZPawn has proffered evidence sufficient to create a dispute over whether Ms. Bonomo exercised reasonable diligence, a reasonable jury could thus find that Ms. Bonomo did not mitigate damages.

Of course, EZPawn must still prove that Ms. Bonomo did not exercise reasonable diligence in order to prevail at trial without showing the availability of substantially equivalent employment. Massey Yardley, 117 F.3d at 1251-52; Sellers, 839 F.3d at 1139. But at the summary judgment stage, EZPawn's failure to present evidence concerning the availability of substantially equivalent employment is not fatal to EZPawn's affirmative defense. Because EZPawn has provided evidence from which a reasonable jury could find Ms. Bonomo was not

reasonably diligent, it has created a triable issue of fact on the question of mitigation.

Ms. Bonomo's Motion for Partial Summary Judgment (Doc. # 26) is therefore denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant EZPawn Florida, Inc.'s Motion for Summary Judgment (Doc. # 25) is **GRANTED** in part and **DENIED** in part.

(2) Summary judgment is granted in favor of Defendant on Count I.

(3) Summary Judgment is denied as to Counts II, III, IV, and V.

(4)  Plaintiff Jan Bonomo's Motion for Partial Summary Judgment (Doc. # 26) is **DENIED.**

(5)  Plaintiff Jan Bonomo's Motion to Strike (Doc. # 39) is **DENIED.**

**DONE and ORDERED** in Chambers in Tampa, Florida, this 17th day of October, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE